IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **KEITH F. BELL, PH.D.,** *Plaintiff,* | § § § | |
| | § | **6:19-CV-265-ADA** |
| *v.* | § § | |
| **LLANO INDEPENDENT SCHOOL DISTRICT and AARON NUCKLES,** *Defendants*. | § § § § | |

## ORDER GRANTING DEFENDANT AARON NUCKLES'S MOTION TO DISMISS IN PART AND GRANTING DEFENDANT LLANO ISD'S MOTION TO DISMISS

Before the Court are Defendant Llano Independent School District ("Llano ISD") and Defendant Aaron Nuckles's respective motions to dismiss. ECF Nos. 14, 15. The Court held a hearing on the motions on January 30, 2020, during which it offered Plaintiff the opportunity to amend his complaint as to the school district. Plaintiff filed a Second Amended Complaint on February 10, 2020. ECF No. 36.

The Court has considered the Motions, subsequent briefing, arguments at the hearing, and applicable law. For the reasons set forth below, the Court finds that Defendant Nuckles's Motion should be **DENIED** with respect to Plaintiff Dr. Bell's copyright infringement claims against Nuckles and **GRANTED** with respect to Plaintiff Dr. Bell's trademark infringement claims against Nuckles. The Court also finds that Defendant Llano ISD's Motion should be **GRANTED** with respect to all of Plaintiff Dr. Bell's claims against Llano ISD.

### I. BACKGROUND

Plaintiff Dr. Keith Bell is a sports psychologist who published the book *Winning Isn't Normal* in 1982. Second Am. Compl. ¶¶ 8, 12. Bell obtained a copyright for the book in 1989 and subsequently obtained a copyright for a specific passage within the book (the "WIN

Passage") in November of 2017. *Id.* ¶ 13. Bell also trademarked the phrase "Winning Isn't Normal" and received a trademark registration for printed matter in 2014. *Id.* ¶ 19.

In January of 2017, Defendant Aaron Nuckles was the basketball coach at Llano Junior High School and was employed by Defendant Llano ISD. *Id.* ¶ 23. Nuckles also maintained a Twitter account at that time under the name "@Coach Nuckles." Def. Nuckles's Mot. at 2. On or about January 5, 2017, Nuckles "Retweeted"[1] a post from a twitter account under the name "@BballCoachMac" which contained a photograph of text nearly identical to the WIN Passage from Dr. Bell's book. Second Am. Compl. ¶ 23; *Id.* Ex. D.

Dr. Bell filed suit against Nuckles and Llano ISD on April 16, 2019. ECF No. 1. Dr. Bell asserted copyright and trademark infringement claims against both defendants based on Nuckles's single Retweet of a photo of the WIN Passage. Def. Nuckles's Mot. at 3. Nuckles and Llano ISD each filed motions to dismiss Dr. Bell's claims under Federal Rule of Civil Procedure 12(b)(6). *Id.*; Def. Llano ISD's Mot.

## II. LEGAL STANDARD

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court takes as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a Rule 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual

---

[1] The "Retweet" feature of Twitter allows a user to quickly share another user's post. The content looks the same as the initial tweet but will be distinguished by the Retweet icon and the phrase "[Username] Retweeted" at the top of the post to indicate that the post is a Retweet.

allegations must be sufficient to "raise a right to relief above the speculative level." *Id*. A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556. However, the plaintiff must plead facts sufficient to "state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III. ANALYSIS

#### A. The Copyright Infringement Claim Against Nuckles

Dr. Bell asserts a claim of direct copyright infringement against Nuckles based on the content of the allegedly infringing Retweet. Second Am. Compl. ¶¶ 42–50. Nuckles argues that (1) Dr. Bell's copyright on the specific WIN Passage is invalid as a matter of law and that only the broader copyright covering the *Winning Isn't Normal* book can be a basis for infringement; (2) the fair use doctrine applies and should warrant dismissal of Dr. Bell's claim; and (3) innocent infringement applies and should warrant dismissal of Dr. Bell's claim. Def. Nuckles's Reply at 1, 3, 10, ECF No. 22. The Court finds that Dr. Bell has alleged facts that "raise a right to relief above the speculative level" regarding a direct infringement claim based on the broader copyright of the *Winning Isn't Normal* book. Therefore, the Court denies the motion to dismiss the copyright infringement claims against Nuckles.

The Court declines to consider Nuckles's contention that the separate WIN Passage copyright is invalid as a matter of law at the early 12(b)(6) stage. The Court finds that the broader copyright covering the entire *Winning Isn't Normal* book is sufficient to allow Dr. Bell's allegations to overcome dismissal of the copyright infringement claim against Nuckles. Thus,

regardless of the validity of the separate WIN Passage copyright, dismissal on Dr. Bell's copyright infringement claim is not warranted.

### 1. *Direct Copyright Infringement*

In order to state a claim for direct copyright infringement, a plaintiff must plausibly establish that (1) he owns a valid copyright; and (2) the defendant copied constituent elements of the plaintiff's work that are original. *ZeniMax Media, Inc. v. Oculus VR, LLC*, 116 F. Supp. 3d 697, 704 (N.D. Tex. 2015). Dr. Bell has alleged sufficient facts to raise the right to relief above a speculative level as to these elements by submitting the certificate of copyright registration of the *Winning Isn't Normal* book and the photograph of the allegedly infringing post. Second Am. Compl. Ex. A, Ex. D. The Court will now address whether Nuckles's fair use and innocent infringement arguments warrant dismissal of Dr. Bell's claim.

#### a) The Fair Use Doctrine

Congress has created an affirmative defense to copyright infringement and has codified that "the fair use of a copyrighted work. . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. §107. When determining whether an action falls under the fair use affirmative defense, the courts are guided by factors that include:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* These factors are non-exhaustive and do not confine a court's fair use inquiry. All factors are explored and weighed together in light of the purposes of copyright with no single factor alone being dispositive. *Campbell v. Acuff-Rose Music Inc.*, 510 U.S. 569, 577 (1994).

A fair use affirmative defense can be considered at the 12(b)(6) stage and "requires the court to consider all [of the plaintiff's] allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008). Thus, if a plaintiff's allegations taken as true and the weighing of the factors establish that the defendant's action falls under the doctrine of fair use, the infringement claim should be dismissed. Here, the Court finds that, upon taking all of Dr. Bell's allegations as true, consideration of the fair use factors does not weigh in favor of fair use at this 12(b)(6) stage. Therefore, dismissal of the direct copyright infringement claim at this stage of the proceedings is improper. This does not, however, preclude a future fair use finding based on a more developed factual record.

The first fair use factor is "the purpose and character" of the alleged infringement. 17 U.S.C. §107. This factor generally favors fair use if the use of a work is transformative; conversely, if the use of a work is a non-transformative (a mere copy without anything more) the factor weighs against fair use. *See Campbell*, 510 U.S. at 579. Courts also consider whether the use was commercial, which counsels against fair use, or non-commercial. *Id.* Here, Nuckles's Retweet is nearly a verbatim copy of the entire WIN Passage but lacks any obvious commercial characteristics. At the hearing on the motion, Nuckles argued that a Retweet is necessarily commentary on the photo, message, or link being Retweeted. Bell responded that such a rule would greatly undermine copyright protections because it would allow any infringer to escape liability by including a simple comment (e.g., "I like that") along with his or her infringing

conduct. The Court declines to decide at this time whether a Retweet is per se commentary, and likewise declines to decide at this time whether Nuckles's Retweet was commentary, because the other factors sufficiently counsel against a fair use finding at this stage. As a result, this factor does not weigh in favor of a fair use defense at the motion to dismiss stage.

The second factor is "the nature of the copyrighted work." This factor favors a finding of fair use when the work is merely factual or noncreative and disfavors a finding of fair use when the work is otherwise expressive, creative, or non-factual. *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1268 (11th Cir. 2014). Further, use of unpublished works are less likely to be fair use to protect the creator's "right to control the first public appearance of his [or her] undisseminated expression." *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555 (1985); *see also Peteski Prod., Inc. v. Rothman*, 264 F. Supp. 3d 731, 740 (E.D. Tex. 2017). Here, the WIN Passage appears motivational and expressive rather than purely factual. However, the passage has long been published in Dr. Bell's book and was available on the internet before Nuckles Retweeted it. Thus, the Court cannot reach a clear conclusion on the second factor.

The third factor considers the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. §107. This determination considers "not only ... the quantity of the materials used, but ... their quality and importance, too." *Patton,* 769 F.3d at 1271 (quoting *Campbell*, 510 U.S. at 587). Thus, even if a small portion of a work is copied, this factor can still weigh against fair use if the copied portion is "the heart of the work." *See Harper & Row*, 471 U.S. 539 (finding that the third factor disfavored fair use when only 300 words were taken out of 200,000 words in President Ford's memoirs because they were "the most interesting and moving parts of the entire manuscript" or "the heart of the work"). Here, the WIN Passage is only one page out of 78 pages in *Winning Isn't Normal* but is plausibly the "heart of the work"

considering that Dr. Bell sells merchandise featuring the WIN passage and that individuals find it moving enough to share with others on Twitter. Thus, taking Dr. Bell's allegations as true, the third factor weighs against fair use.

Finally, the fourth factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. §107. It is essential to note that

> The central question under the fourth factor is not whether Defendants' use of Plaintiffs' works caused Plaintiffs to lose some potential revenue. Rather, it is whether Defendants' use—taking into account the damage that might occur if "everybody did it"—would cause substantial economic harm such that allowing it would frustrate the purposes of copyright by materially impairing Defendants' incentive to publish the work.

*Patton*, 769 F.3d at 1276. Taking all of Dr. Bell's allegations as true at the dismissal stage, it is plausible that if social media use of the WIN Passage became widespread, the incentive to purchase *Winning Isn't Normal* or related merchandise could fall given that the passage is purportedly the most moving section or otherwise "the heart of the work." Thus, this factor weighs against fair use.

Because consideration of the fair use factors and the policy backing the doctrine of fair use does not weigh in favor of extending fair use protection to the Retweet at this time, the Court declines to dismiss Dr. Bell's claim of copyright infringement against Nuckles.

### b)  Innocent Infringement

Nuckles contends in the alternative that Dr. Bell's claims should be dismissed based on the doctrine of innocent infringement. Def. Nuckles's Reply at 10. "The innocent infringer defense gives the district court discretion to reduce the minimum statutory damages from $750 to $200 per infringed work if it finds that the infringer 'was not aware and had no reason to believe that his or her acts constituted an infringement of copyright.'" *Maverick Recording Co. v. Harper*, 598 F.3d 193, 198 (5th Cir. 2010) (quoting 17 U.S.C. §504(c)(2)). This Court declines

to dismiss Dr. Bell's underlying claim for copyright infringement against Nuckles because the defense of innocent infringement, to which the Court is sympathetic, merely reduces the statutory minimum that Dr. Bell may potentially recover. The Court will, however, consider the strong possibility that Nuckles was an innocent infringer if Bell can demonstrate infringement.[2]

### B. The Copyright Infringement Claims against Llano ISD

As discussed above, to establish direct copyright infringement the plaintiff must prove (1) that he owns a valid copyright; and (2) that the defendant copied constituent elements of the plaintiff's work that are original. *ZeniMax Media, Inc. v. Oculus VR, LLC*, 116 F. Supp. 3d 697, 704 (N.D. Tex. 2015). Because Llano ISD did not own or operate the Twitter account and therefore could not directly copy the copyrighted work, Dr. Bell cannot establish a claim of direct copyright infringement. Dr. Bell instead advances theories of secondary liability by alleging vicarious infringement and contributory infringement. Second Am. Compl. ¶¶ 51–56. "One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal citations omitted).

#### 1. *Vicarious Infringement*

Dr. Bell's complaint alleges that "Llano ISD profited from Mr. Nuckles's Twitter page and had a financial interest in his posting" and that "Llano ISD had the right and ability to supervise Mr. Nuckles's Twitter Page." Second Am. Compl. ¶¶ 28, 32. However, for the

---

[2] Notably, the conduct at issue is a Retweet of someone else's post that had no attribution to an author or indication of copyright. Dr. Bell seemingly attempts to impose upon social media users a duty to "ascertain the source of [an] image before posting it." *See* Second Am. Compl. ¶ 39. This Court is skeptical of imposing such a requirement.

following reasons, these allegations alone do not raise a plausible claim for vicarious infringement and should be dismissed.

Vicarious infringement establishes liability when the "defendant profits *directly* from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *Metro-Goldwyn-Mayer Studios*, 545 U.S. at 930 n.9 (emphasis added). Thus, to allege vicarious infringement, the plaintiff must plausibly plead that the defendant "(1) had a *direct financial interest* in the infringing activity; and (2) had the right and ability to supervise the infringing party's acts which caused the infringement." *ZeniMax*, 166 F. Supp. 3d at 704 (emphasis added).

A direct financial interest exists where "the availability of the infringing material acts as a 'draw' for customers." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2014) (internal quotation marks and citations omitted). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Id.* at 1079. Thus, Dr. Bell's complaint must make a plausible allegation that the allegedly infringing Twitter post provided Llano ISD with some direct financial benefit.

Dr. Bell's factual allegations fail to raise the right to relief above the speculative level as required by *Twombly*. The complaint claims that Llano received a direct financial benefit from Nuckles's Twitter post because the post "encourages people to attend basketball games" and "contributed to students wanting to attend schools in the district and to stay in school" thus benefitting Llano ISD's "funding and community support." Second Am. Compl. ¶¶ 32–33.

The tweet itself contains no language inviting readers to attend sport games of any type and no language instructing people to do anything other than to read and appreciate the passage. *Id.* at Ex. D. The Tweet contains no reference to Llano ISD, students of Llano ISD, or the surrounding community. *Id.* At most, the Court can infer that the Tweet lifted the spirits of otherwise uninspired Twitter viewers. Further, even if the Court were to assume that the Tweet plausibly increased basketball attendance or inspired students to attend school, these are not direct financial benefits; these results would merely lead to the, again speculative, possibility of other indirect financial benefits such as concession fees at a basketball game, if any. The Court finds that Dr. Bell has failed to establish beyond mere speculation that increased attendance at basketball games, increased student desire to attend Llano ISD, or any direct financial benefit could be "distinctly attributable" to the allegedly infringing Twitter post. *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 613 (9th Cir. 2018) (involving a copyright claim with a direct financial benefit prong that is applied in the same manner as the common law standard for vicarious liability).

### 2. *Contributory Infringement*

Dr. Bell also claims that Llano ISD is liable for contributory infringement because it (1) "had knowledge of Nuckles's posting of Dr. Bell's work" because of its "monitoring, or ability to monitor, Mr. Nuckles's use of Llano ISD technology resources"; and (2) "materially contributed" to the alleged infringement based on its "provision of technology resources." Second Am. Compl. ¶¶ 34–35. "A party is liable for contributory infringement when it, 'with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another.'" *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (citation omitted). Even if Dr. Bell sufficiently alleged Llano ISD had the requisite knowledge of

Nuckles's infringement, he does not sufficiently allege the school district induced, caused, or materially contributed to the infringement. The complaint baldly states that Llano ISD materially contributed to the Retweet based on its "provision of technology resources." Second Am. Compl. ¶ 35, 55. It does not claim, however, that the school district technology was used to Retweet the WIN passage. At best, it suggests that Llano ISD could discipline Nuckles for his public conduct even when he was not acting as its employee. *Id.* ¶ 31. Even if true, as this Court assumes at this stage, that allegation is insufficient to plead a plausible case of contributory infringement because it cannot establish that the school district encouraged, enabled, supported, or endorsed the post simply because it had a general policy prohibiting copyright infringement.

Thus, the Court dismisses all copyright infringement claims against Llano ISD.

### C. The Trademark Infringement Claims Against Nuckles and Llano ISD

Dr. Bell also brings claims that both Nuckles and Llano ISD have engaged in trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1). Second Am. Compl. ¶ 58. The defendants raise several arguments against this claim, but the Court finds it dispositive that Dr. Bell has not pleaded facts that demonstrate that the alleged infringement occurred "in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services." 15 U.S.C. § 1114(1). Thus, the Court dismisses the trademark infringement claims against both Nuckles and Llano ISD.

To establish a claim for trademark infringement, the plaintiff must establish that:

> (1) [the plaintiff] possesses the mark; (2) the defendant used the mark; (3) the defendant's use of the mark occurred in commerce; (4) the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) the defendant used the mark in a manner likely to confuse consumers.

*Baker v. DeShong*, 90 F.Supp.3d 659, 662 (N.D. Tex. 2014). Elements (3) and (4) highlight the essential characteristic that the use of the mark must be in commerce and in connection with a sale, advertisement, or other commercial purpose. Here, simply studying the alleged infringing post reveals that this use was in no way "in commerce." The post was on Nuckles's personal twitter account, not an account of a business or organization. The post in no way references the school district, sports games, the attendance or participation in sports games, or otherwise instructs or encourages individuals to participate in events or commerce. Instead, Nuckles merely instructs others to read and appreciate the passage for its motivational value. The Court therefore dismisses the trademark infringement claims finding that the Retweet and the facts surrounding it do not fall within "commerce" as defined in the Lanham Act.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to dismiss the copyright infringement claim against Defendant Nuckles and **GRANTS** the motion to dismiss the trademark infringement claim against Defendant Nuckles.

IT IS THEREFORE ORDERED that Defendant Nuckles's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.**

IT IS FURTHER ORDERED that Defendant Llano ISD's motion to dismiss is **GRANTED.**

SIGNED this 13th day of February, 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE